UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA LIND JOHN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　　Defendant. | No. 2:19-cv-02008 CKD (SS)<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for disability insurance benefits and supplemental social security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1964, applied in October 2014 for disability insurance benefits and SSI, alleging disability beginning May 31, 2009. Administrative Transcript ("AT") 21, 39. Plaintiff alleged she was unable to work due to depression, arthritis, anxiety, nerve damage, bipolar

disorder, PTSD, carpal tunnel syndrome, and ADHD. AT 123, 1036. In a decision dated December 8, 2016, the ALJ determined that plaintiff was not disabled.[1] AT 40. Plaintiff filed a civil suit challenging the agency's decision, and on September 12, 2018, the district court remanded the matter back to the Commissioner for further administrative proceedings. AT 1178-1184. After a second administrative hearing in May 2019, the ALJ issued a decision on June 3, 2019, again finding plaintiff not disabled. AT 1032-1047. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

> May 31, 2009, the alleged onset date.
>
> 3. The claimant has the following severe impairments: bipolar disorder, depression, post-traumatic stress disorder, generalized anxiety disorder, history of polysubstance abuse, history of bilateral carpal tunnel syndrome, status post bilateral carpal tunnel syndrome release surgery, and lumbar spine degenerative spondylosis.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except that she can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. She can frequently balance, stoop, kneel, and crouch. She can occasionally crawl. She can occasionally reach overhead with the bilateral upper extremities and can occasionally handle and finger with the bilateral upper extremities. She can perform simple tasks in a setting with no more than occasional interactions with the general public, coworkers, and supervisors.
>
> 6. The claimant is capable of performing past relevant work as a construction flagger. The work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2009 through the date of this decision.

AT 1034-1047.

The ALJ made the following alternative findings:

> The claimant was born on XX/XX/1964 and was 44 years old, which is defined as a younger individual, on the alleged disability onset date. As of November 21, 2014 when she attained age 50, she became an individual closely approaching advanced age. The claimant has at least a high school education and is able to communicate in English. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.
>
> In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform.
>
> . . .
>
> To determine the extent to which [the claimant's] limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]. The

3

>vocational expert testified that given all of these factors, the individual would be able to perform the requirements of representative occupations such as School Crossing Guard, #371.567-010, light exertion, SVP 2, with approximately 45,000 positions nationally.
>
>. . . A finding of 'not disabled' is therefore appropriate[.].

AT 1046.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly weighed the medical opinion evidence; (2) found that plaintiff did not satisfy the medical listing criteria for a mental impairment; (3) discounted plaintiff's subjective testimony about the severity of her impairments; (4) improperly analyzed plaintiff's previous construction job; and (5) replied on vocation expert testimony that was inconsistent with the Dictionary of Occupational Titles.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see

also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

      A.  Medical Opinions

Plaintiff asserts that the ALJ erred in weighing the opinions of treating physician Dr. Richard Malek and examining psychologist Dr. Deborah Schmidt.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala , 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes , 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a

1  treating or examining professional.  Lester, 81 F.3d at 831.

2      1.   Dr. Malek

3      The relevant period of alleged disability in this case is May 31, 2009 to December 31, 2014, when plaintiff last met the statutory insured status requirements.  See AT 10 ("Thus, the claimant must establish disability on or before that date to be entitled to a period of disability and disability insurance benefits.").

Dr. Malek first saw plaintiff on January 10, 2012 at Placer County Medical Clinic.  He noted that she had no prior psychiatric hospitalizations, diagnosed her with depression and general anxiety disorder, and prescribed Lexapro and Vistaril.  AT 625-626.  Dr. Malek saw plaintiff one month later on February 10, 2012, noting difficulties in her personal life.  AT 624.  Plaintiff failed to attend a scheduled therapy appointment in March 2012.  AT 623.

Dr. Malek did not see plaintiff again until February 10, 2014, two years later.  At that appointment, he noted that plaintiff was cooperative, sad, and anxious, with ongoing personal problems.  Dr. Malek assessed major depressive disorder, recurrent, and restarted her medications.  AT 655.  In September 2014, Dr. Malek diagnosed plaintiff with bipolar disorder and anxiety disorder, and changed her medications.  AT 670.  Her mother, who accompanied her, said she had severe mood swings and irritability, and had been "restless, distractible, and impulsive since childhood."  AT 670.  In October 2014, Dr. Malek noted: "Seroquel 100hs is stabilizing her moods to some extent. She occasionally sees things out of the corner of her eyes. Paranoid at times."  AT 675.  He increased her dosage of Seroquel at that time, and again in December 2014, noting: "Her moods are more stable on Seroquel 200hs."  AT 715.  Dr. Malek increased her Seroquel dosage again in January 2015, noting: "She feels less depressed and more stable."  AT 719.

On January 7, 2015, Dr. Malek filled out a one-page "Verification of Physical or Mental Incapacity" for plaintiff, listing her diagnoses of bipolar disorder, depression, and generalized anxiety.  He stated that she was unable to work and that the "probable duration of incapacity" was six months.  AT 709.  Dr. Malek again completed forms stating she was unable to work in June 2015, August 2015, and January 2016.  AT 1037 (citations omitted).  Because the relevant period

of alleged disability ended on December 31, 2014, the January 2015 opinion is the most probative of plaintiff's condition during the time at issue.

The ALJ assessed Dr. Malek's opinions as follows:

> These statements are given little weight because temporary disability is not contemplated in the regulations and because disability is an issue reserved to the Commissioner . . . Dr. Malek provided no specific functional work limitations in these conclusory statements. His statements are not consistent with his own clinic notes. For example, Dr. Malek's clinic note of the same date showed she reported she was 'less depressed and more stable.' Examination was unremarkable other than her speech, which was merely 'a little rapid.'[2]
>
> Dr. Malek's statements are not supported by the weight of the evidence, which shows the claimant's conditions are adequately controlled with treatment and result in limited findings. During the period at issue in this case beginning May 31, 2009, records show the claimant first sought treatment for mental health symptoms in October 2011 when she sought emergency care . . . due to complaints of depression with agitation, paranoia, anger, sleeping difficulties, and sadness due to situational problems with her significant other. However, she denied delusions, suicidal thoughts, or hallucinations. Toxicology screening was positive for alcohol and cannabinoids. She reported she was not an any medications. On examination, she appeared depressed and tearful but her cognition and speech were 'normal.' . . . Records reveal no specific treatment was provided to her other than a breathing treatment with metered dose inhaler (MDI). She was discharged home in 'improved and stable condition[.]'[3]

AT 1037-1038. As the ALJ noted, the 2011 records indicate that plaintiff had ongoing problems in her personal life and reported depression, anger, and trouble sleeping. E.g., AT 382 ("The patient has experienced situational problems related to significant other."), AT 386 ("Severe depression affecting ADLs. Brought in by family. Some situational issues.").

The ALJ's summary of the medical evidence continued:

> The claimant sought no outpatient mental health treatment in 2013. In fact, the claimant specifically denied depression and other mental health symptoms in 2013 and mental status examination was unremarkable with a 'normal' mood and affect, behavior and thought content.[4] Social Security Ruling 16-3p states that had the claimant

---

[2] Citing AT 719.

[3] Citing AT 379-395.

[4] Citing AT 473 (November 2013 exam note that plaintiff denied "depression, anxiety, memory

7

> genuinely felt debilitating symptoms, it would have been more likely that she would have sought and continued appropriate treatment, 'such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources.'
>
> . . .
>
> In February 2015, she reported that her moods were 'stable' and no changes were made to her medications. There were no new findings in Dr. Malek's examination. Moreover, she reported she was 'working as a caretaker.'[5]

AT 1038.

While discounting Dr. Malek's opinions on plaintiff's mental incapacity, the ALJ credited the weight of the State agency psychological consultants, who found that plaintiff had moderate mental limitations that limited her to unskilled work in a limited public setting. AT 1042.

The records from the relevant years show that plaintiff failed to seek treatment for long periods of time and that her mental issues were exacerbated by personal problems which, however deserving of sympathy, do not amount to medical disability. The records also show that medication was helpful in controlling plaintiff's symptoms of mood swings, anxiety, and depression. Based on the foregoing, the undersigned concludes that the ALJ gave specific and legitimate reasons, supported by substantial evidence, to reject Dr. Malek's conclusory opinions that plaintiff was mentally incapable of work.

2. Dr. Schmidt

Dr. Schmidt conducted a psychological disability evaluation of plaintiff in September 2016, nearly two years after the relevant period of alleged disability ended. She reviewed plaintiff's medical records and administered tests to measure plaintiff's cognitive and mental abilities. AT 985-997. The tests "revealed deficits in intellectual functioning, memory, and deficits in complex planning. Dr. Schmidt assessed GAF scores of 45 and 60, suggesting

---

loss, mental disturbance, memory loss, and suicidal ideation"); AT 487 (December 2013 exam note, same); AT 503-504 (September 2013 exam note that plaintiff had no depression and normal mood, affect, and behavior).

[5] Citing AT 738, 740.

moderate to severe impairments." AT 1040, citing AT 996-997.

Based on her September 2016 evaluation, Dr. Schmidt opined that plaintiff

> <u>possesses the intellectual ability to carry out and understand only very simple instructions and tasks</u>. She likely would have difficulty completing tasks of moderate complexity. . . . She also exhibited some difficulty remaining consistently socially appropriate and was very anxious. She had trouble expressing herself often forgot what she was talking about and described becoming extremely anxious and panicky in multiple social settings. <u>The present results therefore suggest that she may have difficulty remaining consistently socially and emotionally appropriate in a work setting with peers supervision and the general public particularly if she experiences stress change or confrontation.</u> <u>She likely should not work with the general public</u>. She likely does possess the capability of being able to take public transit to go various places however again she described becoming anxious and panicky when she is around other people. She likely does possess the capability of being able to identify and respond appropriately to various workplace hazards.

AT 996-997 (emphasis added).

The ALJ partially credited Dr. Schmidt, reasoning:

> This opinion is given some weight because her conclusion that the claimant could perform simple tasks in a limited social setting is consistent with the overall evidence discussed throughout this decision and with other opinions in the record . . . However, the marked and extreme limitations she proposed[6] are given little weight because they are not well supported.
>
> First, Dr. Schmidt noted that the claimant was referred to her by the claimant's representative, which suggestions that she was seen to generate evidence for this application and appeal, rather than in an attempt to obtain relief for disabling symptoms.
>
> Second, Dr. Schmidt indicated that the examination and test results she based her opinion on were of 'questionable validity' because the claimant 'accidentally took two Tramadol on the morning of the evaluation' and was 'somewhat confused and had difficulty focusing on the evaluation.' She was 'increasingly drowsy as the evaluation continued' and had 'difficulty focusing on test items.' . . .
>
> Third, . . . [Dr Schmidt's] opinion is internally inconsistent [On the checkbox form,] she indicated that that the claimant had marked and extreme limitations in virtually every area . . . She stated that the claimant was 'extremely' limited in her ability to get along with coworkers and peers and 'markedly' limited in her ability to interact

---

[6] See AT 983 (Dr. Schmidt's checkbox form showing multiple "marked" and "extreme" mental impairments).

9

> with the general public. However, . . . her narrative report stated merely that she 'may have difficulty' working with peers and supervisors and should not work with the general public.[7]
>
> Fourth, . . . I find her opinion is not consistent with the record as a whole and is not supported by the other discussed medical findings.[8]
> . . .
>
> Finally, the marked and extreme limitations she provided for are not consistent with other opinions in the record . . . Here, I find that Dr. Schmidt relied on the claimant's subjective allegations, which are not supported by the claimant's stated activities of daily living, her interests, and abilities.[9]

AT 1041-1042.

The ALJ determined that plaintiff's RFC was limited to "simple tasks in a setting with no more than occasional interactions with the general public, co-workers, and supervisors." AT 1036. In light of the medical evidence during the relevant period, the internal inconsistencies of Dr. Schmidt's findings, and Dr. Schmidt's acknowledgement that plaintiff's exam results were of "questionable validity" due to medication that made her drowsy and confused, the ALJ provided specific and legitimate reasons to discount the portion of the opinion finding numerous marked and extreme mental impairments.

    B.  Mental Impairment Listings

Plaintiff asserts that, based on Dr. Malek's and Dr. Schmidt's opinions, the ALJ should have found she met or medically equaled Listings 12.03 (schizophrenic, paranoid, and other psychotic disorder), 12.04 (affective disorder), and 12.06 (anxiety disorder). This argument is essentially mooted by the above determination that plaintiff's medical opinion claims lack merit.

The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. §

---

[7] Citing AT 983, 996.

[8] Citing Dr. Malek's January 2012 exam notes, discussed above, and September 2014 exam notes indicating normal mood, affect and behavior. AT 672.

[9] The ALJ's credibility determination is the subject of a separate claim, discussed below.

404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. 20 C.F.R. § 404.1526. A finding of equivalence must be based on medical evidence only. 20 C.F.R. § 404.1529(d)(3).

Here, the ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, 12.06, and 12.15." AT 1035. The ALJ set forth legally valid reasons as to why plaintiff did not satisfy the criteria for these listings, AT 1035-1036, and the undersigned finds no error on this basis.

C. Credibility

Plaintiff next asserts that the ALJ improperly discounted her testimony about the severity of her symptoms.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication,

treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ summarized plaintiff's physical complaints during the relevant period (including hand pain after a fall, and back, neck, and shoulder pain) and the corresponding objective findings, most of which were normal or mild. AT 1042-1043. Plaintiff's "allegations are partially supported by her diligence in seeking treatment and medications for her conditions," the ALJ reasoned; however, "the record does not reveal any significant signs or marked limitations that persisted throughout the relevant period." AT 1044. The ALJ also noted that, in September 2014, while she was allegedly disabled, plaintiff was working as a house cleaner and had normal physical examination findings. AT 1043.

As to mental symptoms, the ALJ noted that plaintiff "sought no outpatient mental health treatment in 2013" and "specifically denied depression and other mental health symptoms" during that year of alleged mental disability; her mental status exams were normal. AT 1038. Pursuant to Social Security Ruling 16-3, the ALJ reasoned that "had the claimant felt genuinely debilitating

symptoms," she likely would have sought additional or different treatment for those symptoms. AT 1038.

The ALJ also found that plaintiff's reported activities of daily living were inconsistent with her alleged limitations, citing evidence that she was able to groom and dress herself, cook meals, perform household chores such as mopping, vacuuming, and washing dishes, go shopping, go to restaurants and the community center, visit family members, and move about the community independently. [10] AT 1041-1042 (finding that plaintiff's "subjective allegations . . . are not supported by the claimant's stated activities of daily living, her interests, and abilities").

After reviewing the record evidence, the ALJ did not dispute that plaintiff suffered from "pain, numbness, mood swings, anxiety, etc., but rather the degree of subjective symptoms the claimant experiences." AT 1045. The ALJ continued:

> Indeed, the assessment of the claimant's [RFC] allows for many of her subjective complaints and limitations.[11] . . . [H]owever, the extent to which the claimant alleges an inability to perform any significant work on a sustained basis are not fully supported when considered in light of the entirety of the evidence of record.
>
> . . .
>
> The objective clinical findings, although not the only factor considered herein, do not support the degree of symptoms and functional limitations the claimant alleges.
>
> The evidence of record as a whole supports a finding that the claimant's symptoms are generally mild to moderate, and not of such intensity and persistence that they preclude all work. Thus, I find that the claimant's allegations . . . concerning the severity of her symptoms, are not wholly supported insofar as the claims that all work activity is precluded.

AT 1045.

In sum, the ALJ considered the objective medical evidence of physical and mental impairment, including medication and treatment; failure to seek treatment for allegedly disabling

---

[10] See AT 56, 61, 62, 71, 76-78 (October 2016 hearing testimony); AT 1093-1095 (May 2019 hearing testimony); AT 280-288 (2014 adult function report by plaintiff); AT 308-316 (2015 adult function report by plaintiff's sister).

[11] E.g., the RFC's limits handling and fingering were based in part on plaintiff's subjective complaints. AT 1044.

13

symptoms; and daily activities inconsistent with the claimed severity of symptoms. He concluded that plaintiff was somewhat, but not entirely, credible as to the severity of her symptoms, as reflected in the RFC. Because the ALJ used the proper process and provided proper reasons as to credibility, the court defers to his discretion on this issue.

### D. Ability to Perform Past Work or Other Work

The vocational expert (VE) testified that plaintiff could perform past relevant work as a traffic flagger or, alternatively, work as a school crossing guard. The VE characterized the job duties of these occupations as "about the same." The ALJ did not ask the VE to resolve any discrepancy between the jobs of traffic flagger and/or crossing guard with plaintiff's RFC limiting her to occasional overhead reaching.

Plaintiff contends that the ALJ's Step 4 finding is erroneous because he improperly segregated out the least demanding work functions of her previous job as a construction laborer into a standalone job as a traffic flagger.[12] She also argues that, contrary to the ALJ's findings, an individual with her RFC could not perform either job.

At Step 4, the ALJ found plaintiff could perform past relevant work (PRW) as a traffic control flagger, "identified in the Dictionary of Occupational Titles under code #372.667-022 as light exertional work that is unskilled with SVP 2." AT 1045-1046.

At the first hearing, the VE testified that plaintiff had past work as a constructer worker, a job performed at the heavy exertional level. AT 82. At the second hearing, plaintiff testified that she did "traffic control" and shoveling on a construction site in 2005. AT 1078.

> Q: And so you would be out there – you would be one of those people telling traffic – telling vehicles to slow down or stop and that kind of thing.
>
> A: Yes.

AT 1079. Plaintiff testified that she worked for two other construction companies doing manual labor such as digging, carrying water, and operating machines. AT 1080-1081. At that hearing,

---

[12] Giving the findings below as to the ALJ's failure to resolve conflicts between the VE's testimony and the DOT, the court does not reach this issue.

1 the VE characterized her past jobs as construction worker and flagger. AT 1103. The VE
2 testified that the job of flagging was performed at the light exertional level, where the person
3 would "[j]ust stand there and wave them through or stop them with their sign." AT 1104. He
4 testified that plaintiff would be able to perform this past relevant work. AT 1104.

5 A claimant has the burden of proving that he or she no longer can perform past relevant
6 work. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ, however, has a duty to
7 make requisite factual findings to support his conclusion on PRW. Id. This is done by examining
8 a claimant's RFC and the physical and mental demands of the claimant's PRW. Id. at 844-45.
9 Social Security regulations advise the ALJ to consider first whether the individual still can do
10 PRW as he or she actually performed it because individual jobs within a category may not entail
11 all of the requirements of a job in that category as set forth in DOT. SSR 96-8p; Pinto, 249 F.3d
12 at 845. The claimant is an important source of information about PRW. SSR 82-41; Pinto, id.
13 Other sources of information that may be consulted include VE testimony and the Dictionary of
14 Occupational Titles ("DOT"). 20 C.F.R. §§ 1560(b)(2) and 416.960(b)(2); SSR 82-61.

15 The ALJ then can proceed to determine whether a claimant can perform his or her PRW
16 as generally performed. Id. Typically, the best source of how a job is generally performed in the
17 national economy is the DOT. Id. The DOT raises a presumption as to job classification
18 requirements. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may accept
19 vocational expert testimony that varies from the DOT, but the record must contain "persuasive
20 evidence to support the deviation." Id. at 846 (quoting Johnson, 60 F.3d at 1435).

21 The ALJ has an affirmative responsibility to ask whether a conflict exists between a VE's
22 testimony and the DOT. SSR 00-4p; Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). If
23 there is a conflict, the ALJ must obtain a reasonable explanation for the conflict and then must
24 decide whether to rely on the VE or DOT. Id.; Massachi, 486 F.3d at 1153. Failure to do so,
25 however, can be harmless error where there is no conflict or the VE provides sufficient support to
26 justify variation from DOT. Id. at 1154 n.19.

27 The Occupational Information Network ("ONET") defines the job Flagger (construction)
28 as follows:

15

> Controls movement of vehicular traffic through construction projects: Discusses traffic routing plans, and type and location of control points with superior. Distributes traffic control signs and markers along site in designated pattern. <u>Directs movement of traffic through site, using sign, hand, and flag signals.</u> Warns construction workers when approaching vehicle fails to heed signals to prevent accident and injury to workers. Informs drivers of detour routes through construction sites. Records license number of traffic control violators for police. May give hand marker to last driver in line up of one-way traffic for FLAGGER (construction) at opposite end of site, signaling clearance for reverse flow of traffic.[13]

The job requires frequent reaching and handling. DICOT 372.667-022 (G.P.O.), 1991 WL 673097. The VE described the job duties of a flagger as "about the same as a crossing guard[.]" AT 1105.

At Step 5, the ALJ relied on VE testimony that a person with plaintiff's RFC could perform the job of School Crossing Guard, #371.567-010, with approximately 45,000 positions nationally. AT 1046. The VE testified that this job was consistent with plaintiff's RFC, which limits her to occasional reaching overhead, handling, and fingering with the bilateral upper extremities. AT 1104-1105.

The DOT defines the job of School Crossing Guard as follows:

> Guards street crossings during hours when children are going to or coming from school: Directs actions of children and traffic at street intersections to ensure safe crossing. Records license numbers of vehicles disregarding traffic signals and reports infractions to police. May escort children across street. May place caution signs at designated points before going on duty and remove signs at end of shift. May stop speeding vehicles and warn drivers.

DOT 371.567-010. The ONET definition includes the following tasks: "Directs movement of traffic through site, using signs, flags, and hand signals" and "Waves flags, signs, or lanterns in emergencies."[14] The job also requires "[t]he ability to bend, stretch, twist, or reach out with the body, arms, and/or legs."[15] The DOT describes "reaching" as "extending hand(s) and arm(s) in any direction." SSR 85–15, 1985 WL 56857, at *7.

---

[13] https://occupationalinfo.org/37/372667022.html (last accessed March 22, 2021) (emphasis added).

[14] https://occupationalinfo.org/onet/63044.html#TASKS (last accessed March 19, 2021).

[15] https://occupationalinfo.org/onet/63044.html#ABILITIES (last accessed March 19, 2021.)

The ALJ did not ask the VE to explain how a person limited in both arms to occasional overhead reaching could perform the job of a traffic control flagger or a school crossing guard. "For a difference between an expert's testimony and the Dictionary's listings to be fairly characterized as a conflict, it must be obvious or apparent." Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016). "The requirement for an ALJ to ask follow-up questions is fact-dependent." Id. The ALJ can rely on common knowledge that "not every job that involves reaching requires the ability to reach overhead. Cashiering is a good example." Id. In Gutierrez, the Ninth Circuit held that the ALJ was not required to ask the VE how a claimant who could not reach overhead with her right arm could perform the job of cashier. Id. at 808-809.

In contrast, in Lamear v. Berryhill, 865 F.3d 1201, 1204 (9th Cir. 2017), a VE testified that a claimant limited to occasional overhead reaching, handling, and fingering in his left arm and hand could perform the jobs of office helper, mail clerk, or parking lot cashier. "The VE did not explain how Lamear could do this work with his left hand and arm limitations, and the ALJ never asked the VE to reconcile any potential inconsistency between Lamear's manipulative limitations and the DOT's job descriptions." Id. The Ninth Circuit "[could not] say that, based on common experience, it is likely and foreseeable that an office helper, mail clerk, or parking lot cashier with limitations on his ability to 'handle, finger and feel with the left hand' could perform his duties. The DOT's lengthy descriptions for these jobs strongly suggest that it is likely and foreseeable that using both hands would be necessary" to perform the jobs." Lamear, 865 F.3d at 1205. "Absent anything in the record to explain this apparent discrepancy, we must reverse and remand so the ALJ can ask the VE to reconcile these jobs with Lamear's left hand limitations." Id. at 1206.

Here, it is not obvious that a person limited to occasional overhead reaching in both arms can perform the jobs of traffic control flagger or school crossing guard. Based on the DOT and ONET descriptions and common knowledge, it is "likely and foreseeable" that both jobs may require raising the arms above shoulder level in order to wave flags and/or direct traffic and children. The ALJ should have asked the VE to reconcile this apparent conflict between his testimony and the DOT. See Newman v. Astrue, 2012 WL 1884892, at * 5 (C.D. Cal. 2010) ("It

17

is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help") (quoting Prochaska v. Barnhart, 454 F.3d 731 (7th Cir.2006)). This error was not harmless, as it involved both jobs that resulted in a finding of nondisability. Thus, plaintiff is entitled to summary judgment.

Given a possible conflict between the VE's testimony and the DOT, the court cannot determine whether the ALJ properly relied on the VE's testimony to conclude that plaintiff could perform past relevant work or a job existing in significant numbers in the national economy.[16] See Massachi, 486 F.3d at 1153–54 & n. 19. The remedy under these circumstances is a remand so the ALJ may conduct the appropriate inquiries. Id. at 1154.

REMEDY

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative

---

[16] Though plaintiff's counsel did not raise this issue at the hearing, "a counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning: 'When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency.' " Lamear, 865 F.3d at 1206.

1  proceedings would serve no useful purpose, it may not remand with a direction to provide

2  benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir.

3  2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the

4  proper approach is to remand the case to the agency.").

5        Here, the record as a whole creates serious doubt as to whether plaintiff was disabled

6  during the relevant period.  The court remands primarily for a proper determination at Steps 4 and

7  5 with the use of supplemental vocational expert testimony, and recommends that the ALJ

8  investigate other issues only as absolutely necessary.  The court expresses no opinion regarding

9  how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved,

10  on remand.  The court also does not instruct the ALJ to credit any particular opinion or testimony.

11  The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find

12  plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff

13  was never disabled during the relevant period, provided that the ALJ's determination complies

14  with applicable legal standards and is supported by the record as a whole.

15        Accordingly, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for

16  further administrative proceedings.

17        Accordingly, IT IS HEREBY ORDERED that:

18        1.  Plaintiff's motion for summary judgment (ECF No. 18) is granted;

19        2.  The Commissioner's motion for summary judgment (ECF No. 19) is denied; and

20        3. This matter is remanded for further proceedings consistent with this order.

21  Dated:  March 23, 2021

22        _____

23        CAROLYN K. DELANEY
         UNITED STATES MAGISTRATE JUDGE

27  2/john2008.ssi.ckd

19